**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH**

| | |
|---|---|
| QUINTEZ TALLEY,         ) | |
|         ) | Civil Action No. 2: 21-cv-0298 |
|         Plaintiff,         ) | |
|         ) | Chief United States Magistrate Judge |
|         v.         ) | Cynthia Reed Eddy |
|         ) | |
| PENNSYLVANIA DEPARTMENT    ) | |
| OF CORRECTIONS; JOHN E.     ) | |
| WETZEL, TRAVIS NAPP, ROBERT   ) | |
| McSURDY and PA DEPT. OF      ) | |
| GENERAL SERVICES,       ) | |
|         ) | |
|         Defendants.      ) | |

**MEMORANDUM OPINION**[1]

      Presently before the Court is Defendants' Motion to Dismiss.  The motion was converted

into a Motion for Summary Judgment on the issue of exhaustion only.  Plaintiff filed a brief in

opposition, together with supporting documentary exhibits.  The matter is ripe for disposition.  For

the reasons that follow, the Court will grant the motion for summary judgment based on Talley's

failure to exhaust.

**I.       Procedural and Factual Background**

      This case was initiated on March 4, 2021, by the filing of a Motion for Leave to Proceed

*in forma pauperis* (IFP Motion) by Plaintiff, Quintez Talley.  (ECF No. 1).  The IFP motion was

granted in part and denied in part based on the Court's determination that Talley had three strikes.

(ECF No. 8). The IFP motion was granted as to Plaintiff's claims challenging the DOC's alleged

---

[1]      All parties have consented to the exercise of plenary jurisdiction by a United States
Magistrate Judge. (ECF Nos. 28 and 30).

inadequate policies and practices regarding fire safety in the Restricted Housing Unit ("RHU) cells under the imminent danger exception to the "three strikes" rule and denied as to Plaintiff's remaining non-imminent danger claims.  As a result of that ruling, the only claims presently before the Court are those claims challenging the DOC's policies and practices regarding fire safety in the RHU cells.[2]

For purposes of this Memorandum Opinion, the facts are quite simple.  Talley, through the Complaint, states that he has a "propensity for using fire to carry out suicide attempts" and that the RHU cells at SCI-Fayette are not equipped with appropriate fire sprinklers.  Specifically, he claims that on July 2, 2019, he attempted suicide by fire in a RHU cell, and that his cell, and all other RHU cells, were not equipped with a fire sprinkler.  Complaint, at ¶ 39 (ECF No. 10).  According to the Complaint, "Pennsylvania fire regulations" require SCI-Fayette to have sprinklers in the individual RHU cells.  *Id*. at ¶¶ 58, 64.

He brings his claims under Title II of the Americans with Disabilities Act, the Rehabilitation Act, and 42 U.S.C. § 1983 for Eighth and Fourteenth Amendments violations.[3]  As relief, Talley seeks an injunction compelling Defendants to equip the RHU cells with fire

---

[2]     The issue of whether Talley has accumulated three strikes is currently pending before the United States Court of Appeals for the Third Circuit.  *See Talley v. Wetzel*, CTA3 No. 19-4005. Defendants have been ordered to notify this Court within twenty-one (21) days of the resolution of this issue on appeal. (ECF No. 37).  Until that issue has been resolved, this case will proceed only on those claims which invoke the imminent danger exception to the three-strikes rule.  *See* 28 U.S.C. § 1915(g).

[3]     Talley also brings a medical malpractice / negligence claim against Defendants Saavedra and MHM, but those claims were found not to invoke the imminent danger exception to the three-strikes rule and were dismissed without prejudice to Talley paying the full statutory and administrative filing fees. *See* Memorandum Order (ECF No. 8), adopting the Report and Recommendation (ECF No. 4).

sprinklers, or at a minimal, to have a fire sprinkler in any RHU cell in which Talley is housed, compensatory and punitive damages, and costs.

Defendants filed the instant motion to dismiss (ECF No. 16), with brief in support and attached documentary exhibits (ECF No. 17), arguing that the Complaint should be dismissed as Talley failed to exhaust his administrative remedies and, in the alternative, that the Complaint fails to state a claim.  The Court issued a response order in which it informed the parties that the motion to dismiss would be converted into a motion for summary judgment under Federal Rule of Civil Procedure 56 with respect to the issue of Talley's exhaustion of administrative remedies only. (ECF No. 23).   Talley, thereafter, filed a brief in response in opposition (ECF Nos. 26 and 27), as well as his own documentary evidence (ECF No. 26-1).  The matter is now fully briefed and ripe for disposition.

## II.    Standard of Review

Three relevant standards of review are at issue in Defendants' motion to dismiss / motion for summary judgment:  Federal Rule of Civil Procedure 12, subsections (b)(1) and (b)(6,) and Rule 56.

### A.    *Rule 12(b)(1)*

Under Rule 12(b)(1), a court must grant a motion to dismiss if there is a lack of subject matter jurisdiction.  Fed.R.Civ.P. 12(b)(1). A plaintiff bears the burden of persuasion that federal jurisdiction is present. *Saint Vincent Health Ctr. v. Shalala*, 937 F. Supp. 496, 501 (W.D. Pa. 1995) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).  The threshold to survive a motion to dismiss under Rule 12(b)(1) is lower than under Rule 12(b)(6). *Lunderstadt v. Colafella*, 886 F.2d 66, 70 (3d Cir. 1989). This is because dismissal for lack of jurisdiction cannot be predicated on the mere probability that a plaintiff's legal theories are false; a court will

only dismiss for a lack of jurisdiction if a plaintiff's legal theories (1) are solely proffered to obtain federal jurisdiction but otherwise are immaterial, or (2) are "insubstantial on their face." *Growth Horizons, Inc. v. Del. Cnty., Pa.,* 983 F.2d 1277, 1280 (3d Cir. 1993) (quoting *Bell v. Hood,* 327 U.S. 678, 773, 776 (1946)).

B.      *Rule 12(b)(6)*

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. In *Ashcroft v. Iqbal*, the Supreme Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and " 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. *Id*. at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim.*" Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the

> elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Although this Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baroka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). When matters outside of the pleadings are presented to the Court on a Rule 12(b)(6) motion, the Court has the discretion to exclude such matters from consideration. *Fed.R.Civ.P. 12(d); Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 905 n.3 (3d Cir. 1997). If matters outside the pleadings are presented to, and not excluded by, the court, a motion to dismiss must be converted to a motion for summary judgment. *See* Fed.R.Civ.P.12(d).

C.     *Rule 56*

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the

dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Hudson v. Proctor & Gamble Paper Prod. Corp*., 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue. *See id*. "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita*, 475 U.S. at 587; *Huston,* 568 F.3d at 104.

This standard is somewhat relaxed with respect to pro se litigants. Where a party is representing himself pro se, the complaint is to be construed liberally. A pro se plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000); *see also*

*Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.").

With these standards in mind, the Court now turns to its analysis and discussion of the pending motion.

## III.   Discussion

The threshold question that must be determined is whether Talley has exhausted his administrative remedies in accordance with the mandate of the Prison Litigation Reform Act ("PLRA"). *See Downey v. Pennsylvania Dep't of Corrections,* 968 F.3d 299, 304 (3d Cir. 2020) (stating that "[e]xhaustion is a threshold requirement that district courts must consider."). *See also Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018).

Defendants contend that Talley failed to exhaust his administrative remedies under the PLRA and, as a result, all claims relating to the lack of fire sprinklers should be dismissed. As the parties were advised, the motion to dismiss was converted to a motion for summary judgment on this issue.

Under the PLRA, a prisoner is required to pursue all avenues of relief available to him within the prison's grievance system before bringing a federal civil rights actions. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000), *aff'd,* 532 U.S. 731 (2001).  Failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be pleaded and proven by Defendants.  *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Moreover, the PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of

7

that grievance / appeal system and a procedurally defective administrative grievance or appeal precludes action in federal court. *Fennell v. Cambria County Prison*, 607 F. App'x 145, 149 (3d Cir. 2015) (citing *Woodford v. Ngo*, 548 U.S. 81, 84, 90-91 (2006) and *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2008)).

The exhaustion requirement is a "bright-line rule" and "it is beyond the power of this court – or any other- to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy, or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). Likewise, as previously stated, our appellate court has been very clear that all available remedies must be exhausted prior to filing suit. *Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006).

The DOC's grievance policy DC-ADM 804 provides the procedures that prisoners must follow in submitting grievances. (*See* ECF No. 17, Exh. A). To initiate a claim, a prisoner must file an initial grievance within 15 working days of an incident. The grievance is submitted to the Facility Grievance Coordinator (Step 1). If the grievance is denied, the prisoner may appeal to the Superintendent. (Step 2). Once a prisoner has received a disposition of his Appeal to the Superintendent, the prisoner may appeal a second time to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") and seek Final Review (Step 3). SOIGA then must respond with a final resolution. *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 151 (3d Cir. 2016).

In support of their motion, Defendants have submitted the declaration of Rhonda A. House, the Superintendent Assistant for the Pennsylvania Department of Corrections at SCI-Fayette. Based on Ms. House's review of the Automated Inmate Grievance Tracking System database and the files for all grievances submitted by Talley while incarcerated at SCI-Fayette, Talley has not

submitted any grievances relating to the lack of sprinklers in the RHU cells at SCI-Fayette. (ECF No. 17-1).

Talley disputes this argument and has provided the Court with Grievance No. 812151, arguing that in this grievance he "expressly complained about his displeasure with the DOC's policy and practices of failing to equip the RHU cells at SCI-Fayette with fire sprinklers . . . ." Br. at 5 (ECF No. 26 at 9). Grievance 812151 has one sentence in this two-page document which refers to fire sprinklers: "The effect the smoke had upon me is also a direct result of John Wetzel, Mark Capozza, the DOC, PA Dept. of General Service and SCI-Fayette's (illegible) ongoing refusal to equip SCI-Fayette's RHU's with fire sprinklers." Also in his claim for relief, Talley seeks damages for "injury I suffered cause of Commonwealth real estate!" (ECF No. 26-1 at 6). The main focus of the Grievance, however, is that Talley was given a misconduct for his suicide attempt, "which is also a practice that DOC & Wetzel have allowed to develop and persist, i.e., my being subject to misconducts and lose of privileges (punishment) for my mental infirmity, refusing to circulate a memo informing my jail that it is not an intentional violation of DOC rules but a manifestation of my disability." *Id.*

The summary judgment record reflects that Grievance No. 812151was initially rejected on July 16, 2019, "due to failure to comply with the provisions of the DC-ADM 804 as specified below:  ● DC-ADM 801:  Inmate Discipline / Misconduct Procedures  [and] ● Grievances based upon different events must be presented separately." Rejection Form (ECF No. 26-1 at 7).  Talley appealed to the Facility Manager stating,

> [E]verything within my grievance ultimately arises out of the deliberate indifference to my mental health treatment.  The fact that I informed the authorities that I was suicidal, who subsequently told the appropriate officials, who refused to provide me any form of mental  health treatment, ultimately resulting in me attempting suicide by way of fire inside a cell without any fire sprinkler . . . .

Appeal to Facility Manager (ECF No 26-1 at 9-10). The Facility Manager rejected the appeal

explaining that,

> Section 1.A.7 of the DC-ADM 804 indicates that grievances related to inmate
> discipline/misconduct and/or administrative custody procedures will not be
> addressed through the Inmate Grievance process and must be addressed through the
> Department policy DC-ADM 801. "Inmate Discipline" and/or DC-ADM 802,
> "Administrative Custody Procedures." A review of this grievance indicates that it
> was properly rejected. You need to follow the DC-ADM 801 or the DC-ADM 802
> procedures. You are referring to misconduct #D314883. Although this misconduct
> was exonerated, you would have needed to go through the DC ADM 801
> procedures concerning your allegations. You failed to do this. You chose to file a
> grievance. **Your grievance was also rejected based on different events [and]
> must be presented separately.** Policy grants a grievant 5 working days to correct
> a rejected grievance and you failed to do this. Instead you chose to appeal the
> rejection. The grievance was properly rejected.

Facility Manager's Appeal Response (ECF No. 26-1 at 11) (emphasis added). Talley, in his

Inmate Appeal to Final Review, explains that he is grieving a single issue:

> Mrs. Rhonda House and Scott Nickelson have been presented with an
> ongoing wrong to which BOTH possess the authority to remedy yet chose to be
> willfully blind to, instead falsely alleging that Plaintiff's grievance is based on a
> misconduct and separate issues . . . .
>
> . . . CLEARLY my grievance isn't concerning a "misconduct charge" or a
> "specific disciplinary sanction" – as the misconduct was ultimately DISMISSED!
> **What I am grieving is the fact that me being given a misconduct for suicide
> attempts being "a practice the DOC and Wetzel have allowed to develop [and]
> persist . . . ."** (see Page 2 of my "Official Inmate Grievance").

Inmate Appeal to Final Review (ECF No. 26-1 at 12) (emphasis added). Kerri Moore, Chief

Grievance Officer, dismissed the grievance on final appeal stating that " "Grievances related to

inmate Discipline/Misconduct Procedures shall be handled according to DC-ADM 801 and shall

not be reviewed by the Facility Grievance Coordinator." (ECF No. 26-1 at 14).

The undisputed summary judgment record demonstrates that Talley never presented

separately a grievance concerning the lack of sprinklers in the RHU cells at SCI-Fayette.

Therefore, because Talley has not fully exhausted his administrative remedies, summary judgment

will be granted on all of Talley's claims which relate to the DOC's practices and policies regarding fire safety in the RHU cells,

**III.    Conclusion**

For these reasons, Defendants' motion to dismiss which has been converted into a motion for summary judgment on the issue of exhaustion only will be granted. [4]

An appropriate Order follows.


Dated:  February 7, 2022                          s/Cynthia Reed Eddy
                                                  Cynthia Reed Eddy
                                                  Chief United States Magistrate Judge


cc:     QUINTEZ TALLEY
        KT5091
        SCI Fayette
        50 Overlook Drive
        LaBelle, PA 15450-1050
        (via U.S. First Class Mail)

        Justin A. Gayle
        PA Office of Attorney General
        (via ECF electronic notification)

---

[4]     Because summary judgment is being granted based on failure to exhaust, the Court need not address Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6).